## Auxier's Executrix et al. v. Theobald et al.

(Decided Oct. 5, 1934.)

584

WILL H. LAYNE for appellants.

JOHN THEOBALD for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing in part and affirming in part.

J. C. B. Auxier, a citizen and resident of Floyd county, Ky., died testate on July 12, 1933. His will was later probated in the Floyd county court, and his widow, whom the will nominated as its executrix, duly qualified. One child and devisee in the will (Anna Lee Auxier) died intestate and without descendants two days before her father's death. This is a declaratory judgment proceeding, filed by the executrix and some of the devisees against the others in the Floyd circuit court, to construe the will of the testator; it being alleged that there was a bona fide controversy as to the correct interpretation of testator's intention as expressed by him in some of the clauses of his will. Upon submission the court rendered judgment embodying what the presiding judge concluded was the proper interpretation of the controverted clauses, but which also determined at least one question which was neither mentioned in the will, nor was it the subject-matter of controversy; nor was any member of a class of individuals affected by the determination made a party to the action. This appeal, prosecuted by two of the defendants in which they joined the executrix (but the appeal of the latter has been dismissed because the judgment granted her all the relief she asked in her fiducial or personal capacity), calls in question the propriety of the judgment rendered by the trial court.

By the first clause of the will the testator bequeathed to his wife one-half of all of his personal property, and in the second one he directed that his debts be paid out of the other half and what was left of it, if any, was divided equally between his children, Anna Lee Auxier, Samuel Robert Auxier, John Friend Auxier, Emma Gertrude Theobald (a daughter), and Mary Luck, the granddaughter of the testator, a child of Mrs.

Theobald, whom the testator had practically reared. In its third clause the testator devised one-third of all of his real estate to his widow, and in the fourth one he devised his real estate, subject to that made to his widow, in the same manner as he devised the remainder of his personal property after the payment of his debts; but he subjoined two conditions and limitations to the devise of his real estate, and which are in this language:

"(a) I will and direct that none of the devisees hereinabove, and in the *fourth* paragraph hereof, specifically, designed and named, shall sell, alien, convey, mortgage or encumber, any, or all, of the said real estate so devised to them, or any of them, for a period of five (5) years next following the date of my decease, provided, that any one, or more of said devisees may sell, alien, convey, mortgage or encumber the interest, or interests of such devisee, or devisees, in said real estate to one, or more, of the other devisees named herein within such five (5) year period, and if any of said devisees shall sell, or shall attempt to sell, alien, convey, mortgage or encumber any, or all, of the said real estate so devised to them, or any of them, for a period of five (5) years next following the date of my decease, except to one, or more, of the other devisees named herein, then, and upon the happening thereof, I give and devise the interest of such devisee, or devisees, to my daughter, Anna Lee Auxier, in fee simple.

"(b) For the purpose of aiding the said devisees hereinabove, and in the *fourth* paragraph thereof, specifically designated and named, in securing a larger and better income from the said real estate so devised to them, during the five (5) year period in which they are limited and restricted in the matter of sales, alienation, mortgaging and encumbering the said real estate so devised to them, I hereby authorize and empower my beloved wife, Mollie E. Auxier, to execute, acknowledge and deliver contracts and leases for the development, operation, drilling and mining of any, and all, coal, minerals, oils and gases upon, in and under any, and all, of my said real estate which she may deem proper and profitable, and upon such terms and conditions as will, in her judgment, secure the largest and best income from said real estate. To this end she is authorized, directed and empowered to collect any, and all, income, rentals and royalties accruing under said contracts and leases, and distribute and disburse the same

among said devisees, as their interests shall appear upon the date, and dates, of such disbursement and distribution. In the event my beloved wife, Mollie E. Auxier, shall not be living at the date of my decease, or in the event she shall be living at the date of my decease, but shall die before the expiration of the five (5) year period hereinabove set out and referred to next following the date of my decease, then, and in that event, I authorize, direct and empower my daughter, Emma Gertrude Theobald, to do and perform each, and all, of the acts and doings hereinabove authorized, directed and empowered to be done and performed by my beloved wife, Mollie E. Auxier, for, and during the said period of five (5) years hereinabove provided, and upon the same terms and conditions.''

In the fifth clause the testator made certain directions concerning management and control of his real estate during the period following his death until the assignment to his widow of her one-third life interest that he had created in the third clause of his will. They are thus stated by him: ''She is authorized and empowered to lease and rent all of my said real estate and collect the rentals accruing from said lease contracts, and for her services in so doing she shall have the right to retain an amount equal to one-third thereof, and the remaining two-thirds thereof she will disburse and distribute among my children, Anna Lee Auxier, Emma Gertrude Theobald, Samuel Robert Auxier, and John Friend Auxier, and my grand-daughter, Mary Luck, in the proportion of an equal one-fifth each,'' while the sixth clause nominated and appointed his widow the executrix thereof with directions that if she did not qualify or died or for any cause ceased to act as such, then his daughter, Emma Gertrude Theobald, should be substituted as such fiduciary with all the powers given in the will.

The judgment is subdivided into divisions (a), (b), (c), (d), (e), and (f). In subdivision (a), it is adjudged that all interests that Anna L. Auxier obtained under the will of her father became vested upon her death in the other devisees under the provisions of section 2064 of our present Statutes, as surviving joint tenants, or tenants in common, and which is clearly correct and is hereby approved, although a vague contention, upon which an alleged controversy arose, was made

by two of the testator's sons to the effect that the death of the daughter Anna L. Auxier not only rendered the five years' suspension period contained in the will void, but also avoided certain management directions with reference thereto, and because thereof it is argued that the section of the Statutes, supra, does not apply to the facts, and that the devised interest of the deceased daughter went upon her death, either to her mother as her only surviving parent, or became undevised estate of the testator and passed under our statute of distribution. But such contentions are so wholly unfounded, in view of the explicit language of the statute, that it becomes entirely unnecessary to incumber the opinion with their discussion.

Subdivision (b) of the judgment determined "that the fee simple title to said real estate did not and does not by said will vest in said devisees, or any of them, for a period of five years" after the death of the testator. In so determining the court was clearly in error, since the inhibitions contained in the five-year period were only conditions subsequent, whereby a devisee might forfeit and defeat the fee-simple title which the will clearly vested in him, and because of which all the devisees, so restrained during that period, were vested with a defeasible fee, which became absolute upon the expiration of that time, provided no forfeiture occurred in the meantime, and which provisions attached to any acquired forfeited interest if the beneficiary of such forfeiture should later, and before the expiration of the period, be guilty of a like forfeiting act. The same subdivision upheld the restriction against alienation and incumbering contained in the fourth clause of the will during the five-year period mentioned therein, and which is clearly proper, whatever may be the law with reference to the absolute right of alienation, since the restriction in this case was for a period of only five years, a reasonable one, and which the law does not forbid. See 40 Cyc. 1713, 1714, wherein it is said, inter alia, "a limited restriction upon an alienation, however, may be good." A supporting case to that text, and which is cited in the note, is Wallace v. Smith, 113 Ky. 263, 68 S. W. 131, 24 Ky. Law Rep. 139. See also, Harkness v. Lisle, 132 Ky. 767, 117 S. W. 264; Kentland Coal & Coke Co. v. Keen, 168 Ky. 836, 183 S. W. 247, L. R. A. 1916D, 924. The domestic cases hold that an absolute and general restraint against alienation of a fee-simple

title is invalid as being against public policy, but a reasonable restraint is not condemned and may be provided against, and especially is that true where there is a limitation over upon a violation of the prescribed restraint, and which is true in this case. Therefore, the determination of the court as embodied in subdivision (b) of its judgment will have to be reversed to the extent of the error pointed out, but it should be and is approved in all other respects.

Subdivision (c) of the judgment held that in the event of a forfeiture of the interest of any devisee by violations of the restrictions contained in the five-year period mentioned in the will, such devisees' interest, or the whole estate if all of them should be guilty of such violations, became forfeited "and descend to either Mollie E. Auxier, the mother and heir at law of Anna Lee Auxier, or to the heirs of the testator, J. C. B. Auxier, as property undevised." The quoted excerpt is clearly erroneous and wholly unfounded, at least in so far as it affects the consequences of a forfeiture occurring during the five-year period, if any nonviolating devisee is alive at that time, since the will clearly provided that as long as there is a nonviolating devisee living the forfeiture inures to his benefit. However, if it should possibly occur that all of the devisees did violate the restrictions during the five-year period, then the whole of testator's estate, affected by the restriction (his real estate in this case), would revert and become a part of the estate of the testator and be distributed among his heirs as undevised property, and which would have the effect to blot out prior forfeitures and to enable the devisees who were likewise the testator's heirs (they being identical in this case, except as to the granddaughter) to become reinvested with the title to the property—not as devisees, but as heirs.

It will be observed that this subdivision of the judgment is in the alternative, which renders it entirely ineffectual as a declaration of rights, or as an adjudication upon the same set of facts. It should have held that in case of a forfeiture by any of the devisees, to whom the five-year period mentioned in the will applied, then his share became forfeited to the one named in the will, but that if all of them violated the restrictions, the entire property to which it related descended to the heirs of the testator. See the Keen Case, supra, in

which prior ones from this court bearing upon the questions are collected and cited.

Subdivision (d) of the judgment declared that the executrix of the testator was authorized and empowered by the will "to rent, lease, operate, maintain, and control all of said real estate for a period of five years from the death of said testator, without limitation or restriction, except as to waste or other unlawful action." That comprehensive declaration is not sustained by any language found in the will and was and is erroneous. The only language contained in the will defining the powers of the executrix during the five-year restriction period mentioned therein is to be found in restriction (b) to the fourth clause of the will, and which only authorizes the executrix "to execute, acknowledge and deliver contracts and leases for the development, operation, drilling and mining of any, and all, coal, minerals, oils and gases upon, in and under any, and all, of my said real estate, which she may deem proper and profitable, and upon such terms and conditions as will, in her judgment, secure the largest and best income from said real estate." The court then proceeds to direct how the income from any such contracts and leases *of minerals* under the land shall be distributed. The quoted language only authorizes the executrix during the five-year period to execute contracts and leases *for mining privileges,* and does not relate to other purposes or uses to which the real estate may be employed. So far as the judgment approved the right of the executrix to make such mining contracts or leases, it is approved; but in so far as it construed the will to authorize and empower the widow to make other contracts throughout the five-year period, not appertaining to the extraction of minerals, it is erroneous.

Subdivision (e) of the judgment declares: "That no creditor of any of the devisees, or any outsider, has power to take, levy on, or sell any of said real estate during said five (5) year restriction, or to do or perform any other act that the devisees could not do." That declaration is the approval of a right forbidden to the testator or the creator of the estate to so prescribe, and especially so if not followed by a limitation over should a creditor of the devisee attempt to subject his interest under the will. But, independently of that forbidding principle of law, and conceding that the testator in this case had the right to so prescribe, the fact is

that he did not do so at any place in his will, since the only restriction he imposed during the five-year period related to *voluntary* action by the devisee in making sales, or incumbering the property, and he nowhere referred to, or in any wise mentioned, what might be the consequences if a creditor of a devisee attempted to subject his interest under the will to the payment of his debt. Moreover, if the will had so dealt with the question, and if it was competent for the testator to do so, then the declaration so made in this subdivision of the judgment was unauthorized because the petition does not allege the name of any creditor as threatening to subject the interest of any devisee, nor is any such creditor made a party to the proceeding; and for which reasons subdivision (e) in the judgment should be entirely eliminated as. being wholly unfounded.

Subdivision (f) of the judgment is but a declaration that the foregoing preceding subdivisions "are and were the intention of said testator," and were and are "in the interest of said estate, and the same is hereby declared to be the rights of the respective parties hereto."

For the reasons stated, the judgment is reversed in part, and affirmed in part, with directions to enter one in conformity with this opinion.